```
 1  $172,855.COM
 2  LEONARDO M. RAPADAS
    United States Attorney
 3  KARON V. JOHNSON
    Assistant U.S. Attorney
 4  Suite 500, Sirena Plaza
    108 Hernan Cortes
 5  Hagåtña, Guam 96910
    TELEPHONE: (671) 472-332
 6  FACISIMLE: (671) 472-7334
 7  Attorneys for the United States of America
```

FILED
DISTRICT COURT OF GUAM
MAY 23 2007
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> $172,855.00 IN UNITED STATES ) <br> CURRENCY, ) <br> ) <br> Defendant. ) | CIVIL CASE NO. 07-00015 <br><br> **VERIFIED COMPLAINT OF FORFEITURE** |

Now comes plaintiff, the United States of America, by and through its attorneys, Leonardo M. Rapadas, United States Attorney for the District of Guam, and Karon V. Johnson, Assistant United States Attorney, and respectfully states as follows:

1. This is a civil action in rem brought to enforce the provision of Title 18, United States Code, §§ 981(a)(1)(C), 1956(c)(7), and 1961(1), for the forfeiture of United States currency which constitutes proceeds traceable to a violation of Title 31, United States Code, § 5332, Bulk Cash Smuggling.

2. The Plaintiff brings this action in rem in its own right to forfeit and condemn the defendant property under Title 31, United States Code, §§ 5332(c) (1) & (2) as currency constituting the subject of bulk cash smuggling. This Court has jurisdiction over this matter by virtue of Title 28, United States Code, §§ 1345 and 1355. Venue is proper in this district

pursuant to Title 18, United States Code, § 981(h) because the related criminal prosecution has been brought in this district, to-wit: United States District Court of Guam, Criminal Case No. 04-00028.

3. The defendant is $172,855.00 in United States currency.

4. The defendant $172,855.00 United States currency was seized from the person of Alexander Mariano Javier, on February 22, 2004.

5. The facts and circumstances supporting the seizure and forfeiture of the defendant currency are contained in the Declaration of Immigration and Customs Enforcement Task Force Officer Erwin Fejeran, attached hereto and incorporated herein as Exhibit A.

6. The defendant $172,855.00 in United States currency constitutes the subject of bulk cash smuggling in violation of Title 31, United States Code, § 5332, and is, therefore, subject to forfeiture to the United States pursuant to Title 31, United States Code, § 5332(c)(1).

**WHEREFORE**, the United States of America prays that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant $172,855.00 in United States currency to be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted this ___17___ day of May, 2007.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By: _____
KARON V. JOHNSON
Assistant U.S. Attorney

-2-

# DECLARATION OF ERWIN FEJERAN

I, ERWIN FEJERAN, being first duly sworn, do depose and say:

1. I am a Task Force Officer of the Immigration and Customs Enforcement (ICE) Agency and make this affidavit in the course of my official duties. I make this complaint based on my personal knowledge and on information furnished to me by other law enforcement personnel.

2. On February 22, 2004, Alexander Mariano Javier was scheduled to take Continental Flight 893 from Guam to the Philippines. Javier had checked a box for the flight. Transportation and Safety Agency officers performed a routine inspection of the box and discovered 39 bundles of United States currency, secured with currency money wrappers. Each bundle had been wrapped in pages from a telephone directory. The total amount of currency was $172,855.00 cash. Javier had not declared to federal or Guam Customs officials that he intended to carry more than $10,000 US currency out of the country. The money was seized. Subsequently, the money was removed from the box and placed in a sealed bag. On two separate occasions, drug detector dogs alerted to the bundles of cash.

3. At about 8:40 a.m., Javier arrived at the Guam International Airport. He was interviewed by ICE Special Agent John Duenas. Javier said that the money was his. He said he had come to Guam January 31, 2004, and that his main purpose was for vacation. Javier said he did not have any friends or relatives on Guam. He initially said he stayed at Room 802 of the Capital Hotel. He then corrected himself and stated it was Room 808. He said he was traveling by himself.

4. Javier said he was a citizen of the Philippines, and self-employed as a broker to recruit Filipino contract workers for overseas construction projects. He said he received a $500 commission for every person he recruited. He said he had two savings accounts, approximately $300 in one and $450 in the other.

5. Javier said this was his fourth trip to Guam, and that he usually stays at the Capitol

Hotel. The purpose of this trip was to shop, though he had not purchased anything during this trip.

6. Javier said he traveled a great deal, that he had been to Los Angeles approximately ten (10) times to visit his sister in Sun Valley, California, and to gamble at the horse races in Santa Ana. Javier said he was aware of the federal requirement that he report the transportation of more than $10,000 in cash, because he had seen this requirement on the Customs reporting forms on many occasions.

7. Javier said he won the $172,855 cash at the Dededo cockfights on February 15, 2004, and that he had kept the cash in his room since then. He had no explanation for why he had not wired the cash to the Philippines via a bank. He said he was an avid cock fighter, but had attended the cockfights only one night while on Guam. He said he had started the night with $4,000 cash, and made outside bets. He said he had paid $50 for admission. He said that the night before the flight, he had wrapped the bundles of cash in pages torn from the telephone directory in his room.

8. Special Agent Duenas questioned Javier about his stay at the Capitol Hotel. Javier continued to deny that he had any connection with anyone there, though he said that during his stay he had met an older man at the hotel restaurant; this man was staying in Room 802. He said that he and this elderly man checked out at the same time, and that the man also took the hotel shuttle to the airport.

9. Agents subsequently met with Tai-Li Hu, the general manager of the Capitol Hotel. Mr. Hu said that Javier arrived at the Capitol Hotel on January 31, 2004, in the company of Edgar Orallo, and had booked two rooms, 802 and 808. Orallo stayed in 802. Mr. Hu said this was the second time that Javier had stayed at the hotel with Orallo. Javier paid for both rooms the day he and Orallo checked out. Javier requested the shuttle take both of them to the airport. Mr. Hu retrieved the telephone directories from Rooms 802 and 808. Pages from both directories had been torn out.

-4-

10. On February 24, 2004, Special Agent Duenas and I met with the Dededo cockfight manager, Henry Torres. Mr. Torres said admission to the cockfight was only $5. In his experience, there was no way that an individual could win over $100,000 at the cockfight, especially if he did not enter a bird. He said that it is not unusual for people to travel to Guam to attend the cockfighting, but such people are known to him and usually enter birds. He said that avid cock fighters will attend the event every night, not just once. The night of February 15, there had been a five-cock derby with 21 entries, so that the total pot was $42,000. He said that if anyone had won such an amount that night as Javier claimed, he would have heard about it. I showed Mr. Torres a photograph of Javier. Mr. Torres did not recognize the picture.

11. CBP Inspector Jean Kho said that Javier arrived on Guam January 31, 2004, and reported he would be staying at the Holiday Inn. A MIDO query reflected that he had come to Guam on three occasions, June 14, 2002, May 3, 2003, and January 30, 2004, and that on each occasion Orallo arrived on the same dates.

12. Based upon my training and experience, and the alert of two drug detector dogs, I believe that this $172,855.00 is the proceeds of drug trafficking on Guam, and that Javier did not report it for that reason.

13. I am seeking forfeiture of this $172,855.00 because it is bulk cash which Javier attempted to smuggle out of the United States, in violation of the reporting requirements of Title 31, United States Code, § 5332.

FURTHER AFFIANT SAYETH NAUGHT.

_____
ERWIN TEJERAN
Task Force Agent

SUBSCRIBED AND SWORN TO BEFORE me on this 21st day of May, 2007.

_____
NOTARY PUBLIC

NOREEN F. SORIANO
NOTARY PUBLIC
In and for Guam U.S.A.
My Commission Expires: Jan. 12, 2010
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910